**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-00762 |
| v. | : | Judge Jeffery P. Hopkins |
| KATIE JEAN FOERSTE, *et al.*, | : | |
| *Defendants*. | : | |

# OPINION AND ORDER

Before the Court is the Order to Show Cause (Doc. 6) issued on October 28, 2025, directing Katie Jean Foerste and Link Logistics, LLC (collectively, "Defendants") to explain why this matter should not be remanded to state court for lack of subject-matter jurisdiction. Doc. 6, PageID 99. Plaintiff Total Quality Logistics, LLC ("Plaintiff" or "TQL") instituted this action by filing a Complaint (Compl., Doc. 2) against Defendants in the Clermont County Common Pleas Court. Thereafter, Defendants filed a Notice of Removal (Doc. 1) (the "Notice") removing the case to Federal District Court on October 21, 2025. In the Notice, Defendants assert that TQL's lawsuit, particularly the amount in controversy, meets the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332(a). Doc. 1, PageID 3. In its state-court Complaint (Compl., Doc. 2, ¶ 43), however, TQL limits the amount in controversy at less than $75,000, and its post-removal stipulation (Doc. 5) confirms that it "will neither seek nor accept" any recovery equal to or greater than that amount. Because this action does not satisfy 28 U.S.C. § 1332(a)'s amount in controversy requirement, the Court

lacks subject matter jurisdiction over this action and **REMANDS** the case to the Clermont County Common Pleas Court to conduct all further proceedings.

## I. BACKGROUND

TQL is an Ohio limited liability company and maintains its principal place of business in Clermont County, Ohio. Compl., Doc. 2, ¶ 2. As a national leader in the logistics industry, TQL arranges freight transportation and other third-party logistics services for its customers nationwide. *Id*. Defendant Link Logistics, LLC ("Link Logistics") is a North Carolina limited liability company with its principal place of business in Belmont, North Carolina, and whose members also reside in North Carolina. *Id*. ¶ 4; Doc. 10, PageID 123–24. Defendant Katie Jean Foerste ("Ms. Foerste") is a resident of North Carolina. Doc. 10, PageID 123. She was previously employed by TQL in various sales and logistics positions from August 9, 2021, until May 19, 2025—for nearly four years. Compl., Doc. 2, ¶ 11.

Eventually, that employment relationship took a turn. Ms. Foerste left TQL on May 19, 2025, and joined one of its direct competitors, Link Logistics, in a similar position as she had held at TQL. *Id*. However, at the start of her employment with TQL, Ms. Foerste had signed an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement ("Agreement"). Pl. Ex. A, Doc. 2. For one year following her employment with TQL, that Agreement prohibited Ms. Foerste from working for any competitor and soliciting TQL's customers. *Id*. at PageID 70–76. It also prohibited her from using or disclosing TQL's confidential or trade-secret information. *Id*. TQL alleges that Ms. Foerste violated the Agreement and also asserts that both Defendants have used or will inevitably use TQL's confidential and trade-secret information. Compl., Doc. 2, ¶ 33.

TQL initiated this lawsuit (Compl., Doc. 2) against Defendants on October 6, 2025, by filing a verified Complaint in the Clermont County Common Pleas Court asserting three Ohio state-law claims: (1) breach of contract against Ms. Foerste; (2) misappropriation of trade secrets against both Ms. Foerste and Link Logistics; and (3) tortious interference with a contract against only Link Logistics. TQL also seeks a temporary restraining order, preliminary injunction, and permanent injunction against Defendants. Compl., Doc. 2. On October 21, 2025, Defendants removed the case to Federal District Court seeking to invoke the Court's diversity jurisdiction. Doc. 1. The Notice of Removal filed by Defendants alleges that the amount in controversy here exceeds $75,000. Doc. 1, PageID 3 ("The amount in controversy in this State Action exceeds the sum or value of $75,000, exclusive of interest and costs.").

Importantly, for our purposes, TQL filed two stipulations in this litigation as to the amount in controversy: one stipulation embedded in the state-court Complaint (Compl., Doc. 2, ¶ 43) and a second, post-removal stipulation (Doc. 5, PageID 96) filed in Federal District Court. In the state-court Complaint, TQL stipulated to the following language (the "State Stipulation"):

> TQL stipulates that it *neither seeks*, *nor will it accept*, any recovery that is an amount greater than or equal to $75,000 *as against each Defendant*, inclusive of compensatory damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and any other relief to which TQL is entitled or seeks, or which the Court awards.

Compl., Doc. 2, ¶ 43 (emphasis added). Two days after Defendants filed the Notice of Removal of this action, on October 23, 2025, TQL filed the Stipulation Regarding Amount in Controversy (Doc. 5) (the "Federal Stipulation"), which provides the following:

> Plaintiff Total Quality Logistics, LLC ("TQL") hereby stipulates that the amount in controversy in connection with TQL's claims in this case is *less than seventy-five thousand dollars* ($75,000), inclusive of compensatory damages, punitive damages, costs,

> attorneys' fees, pre- and post-judgment interest, the fair market value of any injunctive relief, and any other relief to which it is entitled or the Court awards.
>
> TQL further stipulates that *it will neither seek nor accept* any amount equal to or greater than seventy-five thousand dollars ($75,000), inclusive of compensatory damages, punitive damages, costs, attorneys' fees, pre- and post-judgment interest, the fair market value of any injunctive relief, and any other relief to which it is entitled or the Court awards, and that this Stipulation *will be binding upon it*.

Doc. 5, PageID 96 (emphasis added). In light of the filing of the Federal Stipulation, on October 28, 2025, the Court entered an Order to Show Cause (Doc. 6) directing Defendants to illuminate for the Court whether the amount in controversy in this case meets the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a). Doc. 6, PageID 99. Defendants filed a response to the Court's Order to Show Cause (Doc. 9) and TQL opposed the response (Doc. 11). The matter is now ripe for the Court's review.

## II. LEGAL STANDARD

With respect to diversity jurisdiction, it is well established that federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Where, as here, a party has removed an action to federal court and the opposing party challenges the amount at stake, the removing party must show "by a preponderance of the evidence that the amount in controversy requirement has been met." *Hayes v. Equitable Energy Res.*, 266 F.3d 560, 572 (6th Cir. 2001). "This standard 'does not place upon the [removing party] the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.'" *Id.* (quoting *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)). But even though the burden is not onerous, the removing party

"'must do more than show a mere possibility that the jurisdiction amount is satisfied.'" *CLE Trans., LLC v. Total Trans. Network, LLC*, No. 3:21-cv2014, 2021 WL 5919935, at *2 (N.D. Ohio Dec. 15, 2021) (quoting *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)). Finally, "because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006) (citation omitted).

## III. LAW AND ANALYSIS

Neither party in this litigation disputes whether the diversity of citizenship requirement has been met.[1] Therefore, at this juncture, the Court's inquiry focuses solely on whether the amount in controversy exceeds $75,000 as required under 28 U.S.C. § 1332(a). The amount in controversy determination in this case turns on two stipulations filed by TQL, one of which was filed in state court and the other in Federal District Court two days after Defendants

[1] Although the parties have yet to brief the issue, the Court also questions whether 28 U.S.C. § 1332(a)(1)'s diversity of citizenship requirement has been satisfied. Rule 7.1(a)(2) of the Federal Rules of Civil Procedure requires a party in a diversity case to file a statement identifying its citizenship, including upon removal to federal court and when any later event could affect jurisdiction under § 1332(a). Fed. R. Civ. P. 7.1. On November 21, 2025, Defendants filed a Citizenship Disclosure Statement (Doc. 10) pursuant to Rule 7.1(a)(2). Based on that disclosure, Ms. Foerste is a citizen of North Carolina. Doc. 10, PageID 123. Link Logistics, a limited liability company, identified each of its members; all are citizens of North Carolina. Doc. 10, PageID 124. Here, also, TQL, a limited liability company, alleges in its Complaint that it is organized under Ohio law and has its principal place of business in Clermont County, Ohio. Compl., Doc. 2, ¶ 2. Based on these factors, Defendants assert that "[c]omplete diversity of citizenship exists between the parties." Doc. 1, PageID 2. However, TQL has not, as mandated by rule, filed a Rule 7.1(a)(2) disclosure identifying the citizenship of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member."); *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022) ("A limited liability company (commonly known as an 'LLC') has the citizenship of its members and sub-members."). Without TQL's Rule 7.1(a)(2) disclosure, the Court cannot definitively determine TQL's citizenship at this juncture. However, because the Court concludes that the amount in controversy requirement has not been satisfied, it need not resolve the diversity of citizenship issue in this case.

removed this action. Compl., Doc. 2, ¶ 43; Doc. 5, PageID 96. The Court now considers whether, in light of those two stipulations, the amount in controversy requirement is satisfied.

Defendants take the position that the action was properly removed to the District Court pursuant to the Court's diversity jurisdiction. Doc. 1; Doc. 9, PageID 112. According to Defendants, TQL's Federal Stipulation is an "improper attempt to reduce the demand below the jurisdictional threshold," and TQL's claims of breach of contract, misappropriation of trade secrets, and tortious interference when combined with potential treble damages and what they view as joint and several liability, places more than $75,000—roughly $100,000 to $150,000 in controversy. Doc. 9, PageID 114–21. TQL disagrees, arguing that Defendants cannot establish that the amount in controversy requirement exceeds $75,000 based upon both stipulations filed by TQL, which unequivocally limit the relief it seeks to less than $75,000. Doc. 11, PageID 128.

*A. TQL's Federal Stipulation is unequivocal, binding, and Plaintiff's first post-removal clarification of the amount in controversy.*

The Court begins its analysis with the long-standing principle that the plaintiff is the master of her complaint "and therefore controls much about her suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). Indeed, she chooses the parties in any given case, the claims asserted, and the amount of relief being pursued. Building upon that, typically in her complaint, "[a] plaintiff wishing to avoid removal, then, can demand relief in an amount below the jurisdictional threshold." *Total Quality Logistics, LLC v. Lankford*, No. 1:23-cv-303, 2023 WL 4423820, at *2 (S.D. Ohio July 10, 2023).

Ohio, however, follows a unique approach. Rule 8(A) of the Ohio Rules of Civil Procedure presents two major obstacles for plaintiffs. First, Rule 8(A) prevents a plaintiff from

"demand[ing] a specific dollar amount for relief, but instead is limited to alleging whether the plaintiff seeks recovery exceeding $25,000." *Id.*; Ohio Civ. R. 8(A) ("If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought."); *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:20-cv-519, 2020 WL 6075712, at *2 (S.D. Ohio Oct. 14, 2020) (citing Ohio Civ. R. 8(A)). Second, if a plaintiff disregards Rule 8(A) by alleging a specific amount of damages in the complaint, any such stipulation is unenforceable under Ohio law. *Lankford*, 2023 WL 4423820, at *2 ("Ohio law permits a plaintiff to recover damages beyond what their complaint alleges.") (citing Ohio Civ. R. 54(C)); *Total Quality Logistics, LLC v. Johnson*, No. 1:21-cv-467, 2021 WL 3453399, at *2 (S.D. Ohio Aug. 6, 2021); *Summit Logistics Grp., LLC*, 2020 WL 6075712, at *2.

In turn, Rule 8(A) can leave the actual amount in controversy in doubt, potentially leaving room for an Ohio defendant to remove the action to federal court under diversity jurisdiction. *Summit Logistics Grp., LLC*, 2020 WL 6075712, at *2 ("[A] defendant facing suit in Ohio court is free to remove an action, even if the Ohio state court complaint purports to cap the amount in controversy below $75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold."); *Johnson*, 2021 WL 3453399, at *2.

Upon removal, a plaintiff seeking remand of the case generally may proceed in two ways: by (1) filing a binding stipulation stating that it will neither seek nor accept more than $75,000, or (2) by moving for remand. *Summit Logistics Grp., LLC*, 2020 WL 6075712, at *3; *Johnson*, 2021 WL 3453399, at *2. The Sixth Circuit, however, has placed guardrails around

the use of post-removal stipulations to defeat federal court jurisdiction. As the Circuit in *Heyman v. Lincoln Nat'l Life Ins. Co.* explained:

> [a] plaintiff may stipulate to a claim less than the federal jurisdictional amount where a plaintiff provides specific information about the amount in controversy *for the first time*. In such a situation, the stipulation by the plaintiff is not deemed a postremoval *change* in the prayer for relief but merely a *clarification* of the plaintiff's intent. Only an unequivocal statement and stipulation limiting damages will serve this purpose, however. To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand.

*Heyman*, 781 F. App'x at 469–70 (cleaned up) (emphasis added); *Total Quality Logistics, LLC v. Franklin*, No. 1:19-cv-266, 2020 WL 5051418, at *4 (S.D. Ohio Aug. 27, 2020). The Sixth Circuit's distinction between a clarification and a change in *Heyman* is critical here because a plaintiff, such as TQL, may not "reduce or change its demand by stipulation in response to removal, just to avoid federal jurisdiction." *Total Quality Logistics, LLC v. James*, 630 F. Supp. 3d 902, 905 (S.D. Ohio 2022). Rather, TQL is only permitted to "*clarify* the amount at issue by stipulation." *Id.* So, for our purposes, if TQL, here, attempts only to "clarif[y] . . . [its] post-removal stipulation . . . , then there was no basis for federal jurisdiction in the first place." *Id*. Courts in this District resolve disputes over post-removal stipulations by considering whether the stipulation is (1) unequivocal, (2) binding, and (3) the plaintiff's *first post-removal* clarification of the amount in controversy. *See James*, 630 F. Supp. 3d at 906.

Here, all three requirements have been met. First and second, the Federal Stipulation is unequivocal and binding. The Stipulation broadly covers a range of different forms of relief, including compensatory damages, punitive damages, costs, attorneys' fees, pre- and post-judgment interest, the fair market value of any injunctive relief, and any other relief the Court deems appropriate. Doc. 5, PageID 96. Going further, the Federal Stipulation explicitly states that it is "binding upon" TQL, that "the amount in controversy in connection with TQL's

claims in this case is less than . . . $75,000," and that it "will neither seek nor accept any amount equal to or greater than . . . $75,000." *Id*. Courts in this District have routinely found such broad stipulations sufficient to support remand. *James*, 630 F. Supp. 3d at 905; *Johnson*, 2021 WL 3453399, at *3.

As to the third requirement—whether the Federal Stipulation was TQL's *first clarification* of the amount in controversy—Defendants contend that it was not. Doc. 9, PageID 112. More specifically, Defendants maintain that TQL's Federal Stipulation improperly changes, rather than clarifies, the amount in controversy on the theory that the State Stipulation's "as against each Defendant" language reflected an initial intent by TQL to pursue joint and several liability in this case.[2] *Id*. at PageID 115. They contend that this language, coupled with TQL's intentional misappropriation of trade secrets claim, which would permit treble damages under Ohio tort law,[3] ultimately raises the amount in controversy beyond $75,000. *Id*. at PageID 114–15. TQL, by contrast, maintains that both stipulations reflect the same intent—to keep the total amount in controversy below $75,000—and that the Federal Stipulation is the first binding clarification of that limit and does not evidence a change in Plaintiff's position. Doc. 11, PageID 128 ("At no point did TQL ever plead it was seeking anything above $75,000.").

The Court agrees with TQL. Here, Defendants would have the Court cling to the phrase "as against each Defendant" in the State Stipulation to suggest that Plaintiff's demand

---

[2] Under Ohio law, joint and several liability means that each defendant may be liable for the entire judgment, not just a share of it. When defendants are jointly and severally liable, the plaintiff may take judgment for the full amount against any one of the defendants. It is then up to that defendant to pursue contribution from the remaining defendants in the case. *Edwards v. Ohio Inst. of Cardiac Care*, 2007-Ohio-1333, ¶ 75 (2nd Dist.); *Shoemaker v. Crawford*, 78 Ohio App. 3d 53, 66–67 (10th Dist. 1991).

[3] Ohio Rev. Code § 1333.63(B) provides, in relevant part: "If willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made." Ohio Rev. Code. § 1333.63(B).

is one for joint and several liability, though every other aspect of the Stipulation points us in the opposite direction. Compl., Doc. 2, ¶ 43. As noted, the State Stipulation provides that TQL "*neither seeks*, *nor will it accept*, any recovery that is an amount greater than or equal to $75,000 *as against each Defendant*, inclusive of compensatory damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and any other relief to which TQL is entitled or seeks, or which the Court awards." *Id.*

Take first this Court's decision in *Covar*, cited by Defendants. *Total Quality Logistics, LLC v. Covar Transp.*, No. 1:17-cv-797, 2017 WL 6546617, at *2 (S.D. Ohio Dec. 22, 2017). There, the Court held that TQL, also the plaintiff in that proceeding, sought less than $75,000 in the action, which supported remand of the case. *Id.* at *4. Under the complaint, TQL sought damages in "total of $70,000 *from each Defendant*, *individually and severally*." *Id.* at *2. In *Covar*, the defendants argued that TQL had valued its claims at $70,000 per defendant and that Covar could therefore be liable for up to $350,000 in damages based upon the plaintiff's intentional interference claim. *Id.* at *3. The Court rejected that argument, relying instead on the complaint's allegation that the defendants were "individually and severally" liable. *Id.*

Here, Defendants rely on *Covar* to claim that TQL's use of "as against each Defendant," without adding "individually and severally," signals an attempt to seek joint and several liability. Doc. 9, PageID 115, 119 ("TQL's unequivocal First Stipulation requires a single Defendant to be jointly and severally liable for all damages awarded from TQL's claim for misappropriation of trade secrets—which as stipulated, could be an amount up to but not equal to $150,000 . . . Nowhere in the two Stipulations does TQL state that it seeks recovery from Defendants *individually and severally*."). Under Defendants' theory, however, a plaintiff would have to expressly disclaim joint and several liability when the plaintiff is not necessarily

attempting to assert it or make any statement about it at all, but *Covar* nowhere imposes such a requirement.

In addition, *Covar* did not rely on the phrase "from each defendant" in the complaint to decide between either individual or joint and several liability. Rather, the Court relied on the complaint's explicit assertion that the defendants were "*individually and severally*" liable. *Covar Transp.*, 2017 WL 6546617, at *2. That was the language that signaled to the Court the type of liability at play. There is no similar language here. And even if it is true that TQL seeks joint and several liability, that is not evident from the State Stipulation. *Jame*s, 630 F. Supp. 3d at 907 ("The complaint makes no *clear* indication of joint liability.") (emphasis added).

Indeed, a plaintiff who truly intended to plead joint and several liability would be wise to say so by, for example, stating that the plaintiff is seeking "damages jointly and severally against all defendants," or by requesting "a single judgment against all defendants." That plaintiff would also be wise to avoid language that appears to limit its recovery in some form by stating that "it *neither seeks, nor will it accept* . . . an amount greater than or equal to $75,000" and would likely decline to include numerous other forms of relief under that limited amount. Compl., Doc. 2, ¶ 43 (stating that the recovery of less than $75,000 is "inclusive of compensatory damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and any other relief to which TQL is entitled or seeks, or which the Court awards"). The more natural reading here, especially when paired with the will not "seek, nor . . . accept" language, is that TQL sought to limit its *total* recovery to less than $75,000. *Id.*; *Jame*s, 630 F. Supp. 3d at 907. This reading aligns with the Federal Stipulation, in which TQL agreed that it would "neither seek nor accept any amount equal to or greater than . . . $75,000." Doc. 5, PageID

96. In conclusion, the Federal Stipulation was TQL's first post-removal *clarification* of the amount in controversy, not an attempt to change it.

Defendants argue that the Court could award treble damages to TQL if Defendants are found to have willfully and maliciously misappropriated trade secrets (count two in the Complaint), which they say would push the amount in controversy above $100,000. Doc. 9, PageID 114. However, this assertion suggests only that there is a "mere possibility that the jurisdiction amount is satisfied," which is insufficient. *CLE Trans., LLC v. Total Trans. Network, LLC*, No. 3:21-cv-2014, 2021 WL 5919935, at *2 (N.D. Ohio Dec. 15, 2021) (quoting *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)). In addition, a removing defendant must support its amount in controversy showing with evidence, not speculation about how large the eventual award might be and must "come forward with competent proof" that makes it more likely than not that the amount in controversy exceeds $75,000. *James*, 630 F. Supp. 3d at 906 ("That standard presumes the presence of evidence."). Simply pointing to claims that could, in theory, carry substantial damages is not enough. *Id*. In any event, TQL, Plaintiff in this action, is not seeking such an award and has expressly capped the relief it seeks and will accept below $75,000, inclusive of compensatory and punitive damages, attorneys' fees, costs, the fair market value of any injunctive relief, and "any other relief" the Court may award in both the Federal and State Stipulations. Compl., Doc. 2, ¶ 43; Doc. 5, PageID 96. By its terms, that cap encompasses every additional category of damages Defendants identify, including treble damages. So, Defendants' speculation about the recovery that might be available cannot increase the amount in controversy beyond what TQL actually *placed* in controversy—which is below $75,000.

Such a decision was Plaintiff's choice. As this Court has previously explained "[e]ven if a plaintiff could recover more than the federal jurisdictional amount from the harm suffered, they reserve the right to choose to recover only up to a certain amount." *Total Quality Logistics, LLC v. Larney*, No. 1:24-cv-340, 2025 WL 1083813, at *2 (S.D. Ohio Mar. 10, 2025). Indeed, "[t]hat is what it means to be the 'master of the complaint'" and "a binding stipulation in federal court represents the plaintiff's first opportunity to so clarify." *Lankford*, 2023 WL 4423820, at *4. With that principle in mind, the Sixth Circuit has also emphasized that "concern about encroaching on a state court's right to decide cases properly before it requires [federal courts] to construe removal jurisdiction narrowly." *Sanford v. Gardenour*, 225 F.3d 659 (6th Cir. 2000) (citation omitted). Here, the Court finds that TQL's Federal Stipulation meets all three requirements: it is unequivocal, binding, and it is Plaintiff's first post-removal clarification of the amount in controversy. TQL, as master of its complaint, has chosen to cap its recovery below $75,000, and that stipulation requires remand of the action.

## IV. CONCLUSION

On this record, Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court therefore has no subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1332(a) and accordingly, **REMANDS** this case to the Clermont County Common Pleas Court.

**IT IS SO ORDERED.**

July 30, 2026

Jeffery P. Hopkins
United States District Judge